## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| **KANAR SARRAJ,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 1:22-CV-12** |
| | ) | |
| **NORTHERN VIRGINIA ELECTRIC,** | ) | |
| **COOPERATIVE,** | ) | |
| **Defendant.** | ) | |

### MEMORANDUM OPINION

Plaintiff Kanar Sarraj has sued her former employer, Defendant Northern Virginia Electric Cooperative ("NOVEC") for discrimination.  Plaintiff is a Middle Eastern, Muslim, Iraqi-Kurdish woman over the age of 40.  She worked at NOVEC as an engineering manager and then project manager from June 2013 until her February 2020 termination.  The Complaint asserts seven counts:

i.  Count I – sex discrimination in violation of Title VII;

ii.  Count II – national origin discrimination in violation of Title VII;

iii.  Count III – religious discrimination in violation of Title VII;

iv.  Count IV – race discrimination in violation of Title VII and 42 U.S.C. § 1981;

v.  Count V – age discrimination in violation of the Age Discrimination in Employment Act ("ADEA");

vi.  Count VI – a hostile work environment in violation of Title VII, Section 1981, and the ADEA; and

vii.  Count VII – retaliation in violation of Title VII, Section 1981, and the ADEA.

This matter comes before the Court on defendant's motion to dismiss the Complaint.  The

motion to dismiss focuses on four arguments: (i) that almost all of the purported adverse actions of which plaintiff complains fall outside the 300-day lookback period for Title VII and the ADEA; (ii) that plaintiff has failed to state a plausible claim of discrimination; (iii) that plaintiff has failed to allege harassment that was severe or pervasive; and (iv) that plaintiff has failed to allege a causal relationship between her alleged protected activities and any adverse action. Plaintiff opposes the motion to dismiss and oral argument was heard on March 4, 2022.

For the reasons stated below, the motion to dismiss must be granted in part and denied in part.

## I.

The following facts are derived from the allegations in the Complaint, which are taken as true solely for the purpose of resolving the motion to dismiss. *See Papasan v. Allain*, 478 U.S. 265, 283 (1986).

1. Plaintiff is a Middle Eastern, Muslim, Iraqi-Kurdish woman over the age of 40.

2. NOVEC is an electric distribution system that provides electric service to homes and business in Northern Virginia.

3. Plaintiff began working for NOVEC on June 5, 2013 as a Distribution Engineering Manager and for her entire tenure at NOVEC was the only Muslim Iraqi Kurdish woman in the Engineering Department.  Plaintiff began her work with NOVEC in its Gainesville, VA office.

4. During her seven years at NOVEC, plaintiff's job performance was rated as exceeding expectations.

5. In September 2015, Vice President of Engineering Bob Bisson hired Kevin Whyte, a white male in his 20s, as a Distribution Manager.

6. In January 2016, plaintiff learned that Whyte had told employees in his department to stop working on a project managed by plaintiff.

7. Whyte also began holding up execution of work orders on plaintiff's projects, resulting in delays on plaintiff's work.

8. Plaintiff complained to Bisson about Whyte's delays, but Bisson did not respond to her

complaints.

9. Thereafter, Bisson reassigned projects on which plaintiff had been the manager to Whyte and permitted Whyte to assign work to employees managed by plaintiff. Plaintiff complained to Bisson that these projects represented significant growth opportunities and the reassignments adversely affected plaintiff's work.

10. When plaintiff again complained to Bisson, Bisson "berated" plaintiff and called her a "petty and insensitive person." Compl. ¶ 33. Plaintiff continued to email Bisson regarding her concerns, but Bisson did not respond.

11. Other employees noticed the way Bisson and Whyte would treat plaintiff rudely and disrespectfully and asked plaintiff questions about Bisson's and Whyte's behavior.

12. In 2016, Bisson allowed Whyte to be on the "Specification Committee,"[1] removing that role from an Iranian engineer. When plaintiff expressed an interest in the Specification Committee in 2017, Bisson rejected her request, despite the absence of an engineer from plaintiff's department on the Committee.

13. In 2018, plaintiff was excluded from interviews of candidates for a position in her department. Instead, Bisson and Whyte led the interviews.

14. In 2018, plaintiff complained about the unfairness she was facing to a human resources manager, Allison Kane, and asked to be moved to a different office. Ms. Kane did not address plaintiff's concerns.

15. Later in 2018, plaintiff complained to Vice President of Operations Dan Swingler, who also took no action to address Bisson's and Whyte's behavior.

16. Although plaintiff expressed interest in leading a data center project, Bisson would not allow plaintiff to do so.

17. In April 2019, plaintiff was excluded from a meeting regarding an issue between her department and the operations department. Instead, Whyte was invited to the meeting.

18. Bisson would often ask plaintiff inappropriate and harassing questions regarding her faith,[2] including:

   a. "Why are Muslims so close[d] minded?"

   b. "Why can't Muslims resolve conflicts with dialogue?"

   c. "Why are Muslims so brutal and can't solve their problems like western people?"

19. Bisson also frequently made jokes about plaintiff's engineering degree being from a

---

[1] This Committee specified equipment and construction assemblies and developed construction specifications.

[2] It is not clear from the complaint what time frame is applicable to these questions.

"foreign country" and would make fun of the names and intelligence of Middle Eastern candidates for employment. Compl. ¶¶ 65-66

20. Bisson also once stated to plaintiff: "If it weren't for men ruling, women wouldn't know what to do." Compl. ¶ 67.

21. Other male managers would tell inappropriate jokes that made plaintiff uncomfortable.

22. NOVEC eventually took away some of Bisson's responsibilities because of his conduct, but he retained his title as Vice President of the Engineering Department.

23. In July 2019, when plaintiff returned from a vacation, Bisson informed her that he had eliminated plaintiff's position and had combined Whyte's distribution department with plaintiff's engineering department. Bisson also informed plaintiff that Whyte would lead the new combined department, despite plaintiff's greater managerial experience and technical qualifications.

24. Bisson told plaintiff that she could either leave NOVEC or take a project manager position, a position that involved a lower salary grade and that did not require her technical qualifications. Plaintiff accepted the demotion.

25. Later in 2019, plaintiff scheduled a meeting with Chief Executive Officer Stan Feuerberg to ask to transfer to a different division because she could not work with Bisson any longer.

26. Feuerberg agreed to move plaintiff the Administration, Substation, and Telecommunications Division where she would work under Vice President Dave Schleicher.

27. Plaintiff told Schleicher about her fears that Bisson would impede her projects and Schleicher said that he would intervene if Bisson interfered.

28. From August 2019 to January 2020, plaintiff sent Schleicher many emails looking for direction on her new role.

29. Over that time, Schleicher changed plaintiff's responsibilities and expectations many times, in ways that were out of line with her expectations when she accepted the position.

30. Additionally, Bisson and Whyte were refusing to share project information with plaintiff and would refuse to respond to her emails.

31. Plaintiff complained to Schleicher about Bisson and Whyte's failure to cooperate and failure to complete necessary tasks. Schleicher then had to speak with Bisson and Whyte to get them to cooperate with plaintiff.

32. On February 3, 2020, Schleicher presented plaintiff with a separation agreement and told her that her performance was an issue.

33. Plaintiff was never offered progressive discipline as outlined in the employee handbook

4

and, when plaintiff asked Schleicher for problems with her performance, Schleicher could not provide any.

34. Eventually, Schleicher disclosed that plaintiff was fired because the relationship between her and Bisson's group, including Whyte was not improving.

35. Later, NOVEC stated that it terminated plaintiff because:

    a.  She used a scheduling application instead of Excel or MS projects;

    b.  She did not create and maintain necessary internal relationships to perform her position;

    c.  She did not develop process and procedures; and

    d.  She did not "mend the relationship" with Mr. Whyte. Compl. ¶ 120.

36. On May 5, 2020, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

37. On October 9, 2021, plaintiff received a Notice of Right to Sue from the EEOC.

## II.

The well-settled motion to dismiss standard does not require extensive elaboration. As the Supreme Court has made clear, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). Importantly, in making this determination, a district court must "accept as true all well-pled facts in the complaint and construe them in the light most favorable to [the plaintiff]." *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 n.1 (4th Cir. 2015). But a district court is not bound to "accept as true a legal conclusion couched as a factual allegation." *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014).

**A. 300 Day Lookback**

To begin with, defendant argues that plaintiff's claims based on discrete acts of discrimination that occurred prior to July 10, 2019 are time-barred because they occurred more

than 300 days before charge of discrimination ("EEOC Charge") was filed with the EEOC. Under both Title VII and the ADEA,[3] an individual who seeks to raise claims of discrimination must file a charge with the EEOC within 300 days "from the occurrence of the discriminatory event." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435 (4th Cir. 2019). Here, plaintiff filed her EEOC Charge on May 5, 2020. In the Complaint, plaintiff is unclear what specific acts of discrimination she intends to rely on to support her allegations of discrimination. Defendant therefore argues that any discrete act of discrimination which occurred prior to July 10, 2019 are time-barred, including plaintiff's complaints regarding: (i) her being passed over for the Specifications Committee in 2017; (ii) her exclusion from interviews in 2018; (iii) her exclusion from work processing meetings in April 2019; (iv) her 2018 complaints to human resources; and (v) her 2018 complaints to Swingle.[4] It is unclear from the allegations in the Complaint whether plaintiff's demotion to project manager in July 2019 is timely or not. Defendant suggests in the motion to dismiss that plaintiff's demotion took place before July 10, 2019, but that is not clear from the Complaint. Thus, plaintiff has failed to plead facts sufficient to demonstrate that her July 2019 demotion claim is timely. Accordingly, plaintiff will be permitted to amend her Complaint to make clear whether her July 2019 demotion occurred before or after the July 10, 2019 cutoff date.

     In response, plaintiff acknowledges that many of her alleged adverse actions in support of

---

[3] The 300-day lookback window does not apply to plaintiff's Section 1981 claims.

[4] In addition to being untimely, several of the untimely discrete acts upon which plaintiff attempts to rely are not adverse employment actions. As defendant correctly notes, being excluded from meetings or being the subject of uncivil behavior are not adverse employment actions. *See, e.g., Brockman v. Snow*, 217 F. App'x 201, 206 (4th Cir. 2007) (holding that assigning different projects and failing to return phone calls was not an adverse employment action); *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 189 (4th Cir. 2004) (holding that being excluded from meetings and emails was not an adverse employment action); *Munday v. Waste Mgmt. of N.A., Inc.*, 126 F.3d 239, 243 (4th Cir. 1997) (holding that giving an employee less preferable work assignments, excluding her from meetings, or ignoring her is not enough for an adverse employment action).

her discrete claims of discrimination and retaliation under the ADEA and Title VII took place beyond the 300-day lookback period. Seeking to avoid the bar, however, plaintiff argues that she can avail herself of the so-called "continuing violation theory." Plaintiff is incorrect. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116-21 (2002) (holding that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges"). A "discrete act" can, however, still comprise part of a hostile work environment claim, so long as at least one act that makes up the alleged hostile work environment claim occurred within the lookback period. *Guessous v. Fairview Property Invs., LLC*, 828 F.3d 208, 221-22 (4th Cir. 2016). Importantly, even the cases plaintiff cites do not support her position and reflect instead that the continuing violation theory is available only to support a hostile work environment claim. *See, e.g., Holland v. Washington Homes, Inc.*, 487 F.3d 208, 220 (4th Cir. 2007) ("Holland, however, cannot benefit from the continuing violations theory because he has alleged discrete violations."). Accordingly, plaintiff's reliance on the continuing violation theory is misplaced.

In sum, plaintiff may not rely on any alleged discrete discriminatory acts that occurred prior to July 10, 2019 to support Counts I-V or Count VII. Moreover, plaintiff must amend her complaint to make clear whether the July 2019 demotion she suffered occurred before or after July 10, 2019. Plaintiff may rely on acts that occurred prior to July 10, 2019 to support her hostile work environment claim in Count VI. Thus, analysis of plaintiff's discrete claims of discrimination will focus on two adverse employment actions: (i) plaintiff's July 2019 demotion, which *may* be timely; and (ii) plaintiff's termination, which is clearly timely.

**B. Title VII: Sex Discrimination (Count I)[5]**

Plaintiff has plausibly alleged that her July 2019 demotion, if timely, was the result of sex discrimination, but has not plausibly alleged facts that support a reasonable inference that her termination was the result of sex discrimination. With respect to plaintiff's demotion, plaintiff has alleged: (i) that her supervisor, Bisson, had previously commented that "if it weren't for men ruling, women wouldn't know what to do;" (ii) that she was demoted from a Department Manager to a Project Manager when her department was combined with another department; (iii) that she had more experience and technical experience than Whyte, who was also a Department Manager who reported to Bisson; and (iv) that Bisson chose Whyte to be the Director of the new combined department. These facts, as pled in the Complaint, plausibly allege that plaintiff's July 2019 demotion, if timely, was the result of sex discrimination.

Defendant argues that Whyte cannot be a comparator for plaintiff, because "his position was also eliminated." Mem. Supp. MTD at 7 (Dkt. 9). This argument is disingenuous. Although it is true that Whyte's Department Manager position was also eliminated, he was not demoted to a Project Manager position upon the elimination of his Department Manager position, but instead was promoted to a Director position. Because Whyte is a male Department Manager who also reported to Bisson and also had his Department Manager position eliminated, he is a valid similarly situated comparator who was treated more favorably than was plaintiff upon the elimination of their Department Manager positions. Accordingly, assuming that plaintiff's July 2019 demotion was timely, plaintiff has stated a plausible claim for sex discrimination.

---

[5] To begin with, the parties engage in a lengthy discussion about whether plaintiff has alleged that she has direct evidence of discrimination. At this stage of proceedings, this distinction is unimportant, as a plaintiff "need not plead a *prima facie* case of discrimination . . . to survive a motion to dismiss." *Swierkowitz v. Sorema*, 534 U.S. 506, 512 (2002). Rather, to survive a motion to dismiss, a plaintiff must have alleged facts that "support a *reasonable inference* that the decisionmakers were motivated by bias." *McCleary v. Md. Dept. of Transp.*, 780 F.3d 582, 586 (4th Cir. 2015) (emphasis in original).

By contrast, plaintiff points to no facts that suggest that her termination was the result of sex discrimination. The decision-maker for plaintiff's termination was Schleicher, not Bisson, and plaintiff does not allege that Schleicher exhibited any bias against women. Nor does plaintiff point to any similarly situated comparators with respect to her termination. At the time of her termination, plaintiff reported to a different supervisor and had different job responsibilities than Whyte. Thus, Whyte is not an appropriate comparator with respect to plaintiff's termination. *See Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (holding that, where a plaintiff relies on similarly situated comparators, the plaintiff is "required to show that they are similar in all relevant respects to their comparator"). Accordingly, plaintiff has not alleged facts that plausibly state a claim for sex discrimination with respect to her termination.

Accordingly, the motion to dismiss must be granted with respect to plaintiff's claim of sex discrimination based on her termination. The motion to dismiss will also be granted with respect to plaintiff's July 2019 demotion, but plaintiff will be permitted to amend her complaint to allege facts sufficient to demonstrate that this claim of sex discrimination is timely.

**C. Title VII: National Origin Discrimination (Count II)**

Like her claim of sex discrimination, plaintiff has alleged a plausible claim of national origin discrimination with respect to her July 2019 demotion, if it is timely, but not with respect to her termination. With respect to plaintiff's national origin discrimination claim based on her demotion, plaintiff alleges that: (i) she was the only Iraqi-Kuirdish woman in the engineering department; (ii) Bisson was her supervisor; (iii) Bisson would make "jokes" about plaintiff's accent and about her engineering degree being from a foreign country; (iv) "joked" about Middle Eastern job candidates' names and made comments about their intelligence; (v) that she was demoted from a Department Manager to a Project Manager when her department was combined

with another department; (vi) that she had more experience and technical experience than Whyte, who was not Iraqi Kurdish and who was also a Department Manager who reported to Bisson; and (vii) that Bisson chose Whyte to be the Director of the new combined department. These facts, as pled in the Complaint, plausibly allege that plaintiff's July 2019 demotion, if timely, was the result of national origin discrimination. As discussed *surpa*, defendant's argument that Whyte is not an appropriate comparator is unpersuasive; Whyte is a valid comparator.

Plaintiff fails to establish a *prima facie* case of national origin discrimination with respect to her termination, however. Again, the decision-maker for plaintiff's termination was Schleicher, not Bisson, and plaintiff does not allege that Schleicher exhibited any bias against Iraqi-Kurds. Nor does plaintiff point to any similarly situated comparators with respect to her termination. At the time of her termination, plaintiff reported to a different supervisor and had different job responsibilities than Whyte. Thus, defendant correctly argues that Whyte is not an appropriate comparator with respect to plaintiff's termination. *See Haywood*, 387 F. App'x at 359. Accordingly, plaintiff has not alleged facts that plausibly state a claim for national origin discrimination with respect to her termination

Accordingly, the motion to dismiss must be granted with respect to plaintiff's claim of national origin discrimination based on her termination. The motion to dismiss will also be granted with respect to plaintiff's July 2019 demotion, but plaintiff will be permitted to amend her complaint to allege facts sufficient to demonstrate that this claim of national origin discrimination is timely.

### D. Title VII: Religious Discrimination (Count III)

Again, plaintiff has alleged a plausible claim of national origin discrimination, based on her Muslim religion, with respect to her July 2019 demotion, if it is timely, but not with respect to

her termination.  With respect to plaintiff's religious discrimination claim based on her demotion, plaintiff alleges that: (i) plaintiff was the only Muslim woman in the engineering department; (ii) Bisson was her supervisor; (iii) Bisson made comments to plaintiff regarding her religion and connecting it to ISIS terrorists – for example, asking "why are Muslims so brutal and can't solve their problems like western people?"; (v) that she was demoted from a Department Manager to a Project Manager when her department was combined with another department; (vi) that she had more experience and technical experience than Whyte, who was not Muslim and who was also a Department Manager who reported to Bisson; and (vii) that Bisson chose Whyte to be the Director of the new combined department.  These facts, as pled in the Complaint, plausibly allege that plaintiff's July 2019 demotion, if timely, was the result of religious discrimination. As discussed *surpa*, defendant's argument that Whyte is not an appropriate comparator does not hold weight.

Like her claims of sex and national origin discrimination related to her termination, plaintiff fails to allege facts which state a plausible claim for religious discrimination.  Again, the decision-maker for plaintiff's termination was Schleicher, not Bisson, and plaintiff does not allege that Schleicher exhibited any bias against Muslims.  Nor does plaintiff point to any similarly situated comparators with respect to her termination.  At the time of her termination, plaintiff reported to a different supervisor and had different job responsibilities than Whyte.  Thus, defendant correctly argues that Whyte is not an appropriate comparator with respect to plaintiff's termination. *See Haywood*, 387 F. App'x at 359.  Accordingly, plaintiff has not alleged facts that plausibly state a claim for religious discrimination with respect to her termination

Accordingly, the motion to dismiss must be granted with respect to plaintiff's claim of religious discrimination based on her termination. The motion to dismiss will also be granted with respect to plaintiff's July 2019 demotion, but plaintiff will be permitted to amend her complaint to

allege facts sufficient to demonstrate that this claim of religious discrimination is timely.

**E.  Title VII/Section 1981: Race Discrimination (Count IV)**

Plaintiff's claims of race discrimination in violation of Title VII and Section 1981 require a slightly different analysis.  Plaintiff premises her race discrimination claims on her "Iraqi-Kurdish" identity.  *See* Opp'n Br. at 14 (asserting that plaintiff faced discrimination relating to "her race as an Iraqi-Kurdish individual").  In support, plaintiff relies on allegations that Bisson made derogatory remarks related to plaintiff being a Muslim and from a foreign country. *See* Compl. ¶¶  62-66.  These allegations, however, do not relate to plaintiff's race; rather, the allegations contained in paragraphs 62 through 66 relate to plaintiff's religion and national origin.  Accordingly, plaintiff has not alleged facts that establish a plausible claim for race discrimination and her claims of race discrimination must be dismissed.

Race, national origin, and religion are "ideologically distinct."  *Kun v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 949 F. Supp. 13, 19 (D.D.C. 1996) (holding that "it would not be proper for the Court to re-cast the plaintiff's national origin discrimination claim as a race discrimination claim").  As many courts recognize, complaints of discrimination based on an "Iraqi background" do not state a claim for race discrimination. *See Anooya v. Hilton Hotels Corp.*, 733 F.2d 48, 49-50 (7th Cir. 1984) (affirming the dismissal of a § 1981 race discrimination claim where the plaintiff complained of discrimination based on his "Iraqi background"); *Quraishi v. Kaiser Foundation Health Plan of the Mid-Atl. States, Inc.*, 2013 WL 2370449, at *2 (D. Md. May 30, 2013) ("[T]o the extent Ms. Quraishi seeks to base her § 1981 claim on racial discrimination she faced because she is . . . of Pakistani origin, her claim must fail"); *Benitez v. Tyson Fresh Meats, Inc.*, 2022 WL 1283087, at *44 (M.D. Tenn. Apr. 28, 2022) (holding that none of plaintiff's evidence "has anything to do with discrimination on the basis of being a member of

the *Arabic race*" and holding that, "[i]nstead, it has to do with being 'Spanish' or 'Iraqi' or foreign, or Muslim; none of these categories is coterminous with being a member of the 'Arabic' race"). Courts have also held that plaintiff's identity as a Muslim does not represent a race, but her membership in a religious faith. *See Guthrey v. Ca. Dep't of Corr. & Rehab.*, 2012 WL 2399938, at \*6 n. 2 (E.D. Cal. Feb. 11, 2015) ("'Muslim,' however, does not represent race, ancestry, or national origin. Rather, a Muslim is an individual who is a believer in or adherent of the Islamic faith."); *Ahmed v. Mid-Columbia Med. Ctr.*, 673 F. Supp. 2d 1194, 1204 (D. Ore. 2009) (holding that anti-Muslim discrimination cannot support a § 1981 race claim); *Nofal v. Jumeirah Essex House*, 2010 WL 4942218, at \*4 (S.D.N.Y. Dec. 3, 2010) (holding that hostility towards Muslim faith cannot support a § 1981 race discrimination claim). Thus, plaintiff's allegations that Bisson made disparaging remarks about plaintiff's Muslim religion and status as a foreigner cannot support a race discrimination claim and Count III must be dismissed.

Even assuming that plaintiff's Iraqi-Kurdish identity could support her race discrimination claim (which it cannot), plaintiff's Title VII claim based on her termination must fail for the same reason that her other Title VII claims failed as discussed *supra*. Additionally, plaintiff has not satisfied the pleading standard for a § 1981 claim because plaintiff has not alleged facts which plausibly demonstrate that "*but for* race, she would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Assoc. of African American-Owned Media*, 140 S.Ct. 1009, 1019 (2020) (emphasis added). Plaintiff merely pleads, with respect to her race discrimination claim based on her demotion, that she is an Iraqi-Kurdish woman who was demoted while a similarly situated white man – Whyte – was promoted. Plaintiff does not plead that any of Bisson's comments related to her race as an Iraqi-Kurd, rather than as someone he considered foreign, nor does plaintiff plead that any of Bisson's comments were made in connection with her demotion.

Thus, plaintiff's claims of race discrimination fall short of the "but-for" standard applicable to § 1981 claims.

In sum, plaintiff has failed to plead a plausible race discrimination claim under either Title VII or Section 1981 because she has not alleged any discrimination based on her race. Even assuming that plaintiff could base her race discrimination claim on her status as an Iraqi-Kurd, her Section 1981 claim would still be dismissed because plaintiff has not alleged facts that plausibly demonstrate that her race was the but-for cause of any adverse employment action.

**F. ADEA: Age Discrimination (Count V)**

Plaintiff's claim of age discrimination presents a closer question than her Title VII claims of discrimination, because she does not allege that Bisson or Schleicher expressed any animus to her regarding her age or regarding people over 40 in general. If it is timely, plaintiff has pled a plausible claim for age discrimination based on her July 2019 demotion; however, plaintiff has not pled sufficient facts to state a plausible claim for age discrimination based on her termination.

Plaintiff's allegations in support of her claim of age discrimination with respect to her demotion are: (i) Plaintiff is over 40; (ii) Whyte is in his 20s; (iii) she was demoted from a Department Manager to a Project Manager when her department was combined with another department; (iv) she had more experience and technical experience than Whyte, who was also a Department Manager who reported to Bisson; and (v) Bisson chose Whyte to be the Director of the new combined department. Courts recognize that it is sufficient for a plaintiff's *prima facie* case at the motion to dismiss stage for a plaintiff to rely on a single comparator. *See Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 406-07 (7th Cir. 2007) ("A single comparator will do; numerosity is not required."); *Carter v. Md. Aviation Admin.*, 2005 WL 1075438, at *4 n.1 (D. Md. May 6, 2005) (holding that one comparator is enough). As discussed *surpa*, defendant's

argument that Whyte is not an appropriate comparator does not hold weight. Also supporting plaintiff's claim in this regard, is her allegation that, in January 2021, defendant uncoupled her old department from Whyte's and hired a woman under 40 to fill plaintiff's original department manager role.    Accordingly, plaintiff's claim of age discrimination based on her July 2019 demotion will be dismissed with leave to amend to make allegations that the claim is timely.

Plaintiff's claim that her termination was also the result of age discrimination does not survive the motion to dismiss.  Plaintiff cannot point to a similarly situated comparator with respect to her role in Administration, Substation, and Telecommunications nor does plaintiff point to any other specific, factual allegations related to the age discrimination that she alleges caused her termination.  Most of the allegations in the Complaint that related to plaintiff's claim of age discrimination are the sort of conclusory recitals of elements of a claim that are devoid of factual substance and which have been rejected by the Supreme Court in its *Iqbal* and *Twombly* decisions. *See, e.g.,* Compl. ¶ 168 ("NOVEC treated Sarraj in a disparate manner than other employees under the age of 40, giving favor, opportunities and advantages substantially younger than her, i.e., Mr. Whyte who was in his 20s, while depriving her of similarly situated favorable opportunities, advantages, and treatment.").   Thus, plaintiff has failed to state a claim for age discrimination based on her termination.

Accordingly, the motion to dismiss must be granted with respect to plaintiff's claim of age discrimination based on her termination. The motion to dismiss will also be granted with respect to plaintiff's July 2019 demotion, but plaintiff will be permitted to amend her complaint to allege facts sufficient to demonstrate that this claim of age discrimination is timely.

**G. Title VII/Section 1981/ADEA: Hostile Work Environment (Count VI)**

Defendant also seeks dismissal of each of plaintiff's claims of a hostile work environment.

To establish a hostile work environment under any of these three Acts, plaintiff must allege conduct that was: (i) unwelcome; (ii) based on a protected class; (iii) sufficiently severe or pervasive to alter the terms or conditions of plaintiff's employment; and (iv) imputable to her employer. *See e.g., Fox v. Gen. Motors Corp.*, 247 F.3d 169, 176- 77 (4th Cir. 2001) (ADA); *Burns v. AAF-McQazy, Inc.,* 166 F.3d 292, 294 (4th Cir. 1999) (ADEA); *Pueschel v. Peters*, 577 F.3d 558, 564-65 (4th Cir. 2009) (Title VII).  Here, plaintiff bases her claim of a hostile work environment on: (i) her sex; (ii) her national origin; (iii) her religion; (iv) her race; (v) her age; and (vi) her protected activities.

   To begin with, plaintiff has not plausibly alleged that the purported harassment by Bisson or Whyte was based on her race or age.  As discussed *supra* in Section II.E, plaintiff has not alleged any facts related to her race. Furthermore, as discussed *supra* in Section II.F the allegations in the Complaint regarding age are conclusory and devoid of factual allegations. With respect plaintiff's claims of an age- or race-based hostile work environment, it appears that plaintiff intends to rely solely on the allegations that plaintiff was over forty and Iraqi-Kurdish, while the principal harassers were white men – at least one of whom was under 40.[6]  That is not enough for plaintiff to state a plausible claim for a hostile work environment.[7]  Accordingly, plaintiff's claims of age- and race-based hostile work environments must be dismissed.

   Plaintiff's claim of a sex-based hostile work environment is also flawed.  With respect to her claim of a sex-based hostile work environment, plaintiff merely adds the allegation that Bisson

---

[6] Plaintiff does not even allege Bisson's age.

[7] *See McCleary-Evans v. Md. Dept. of Transp.*, 780 F.3d 582, 588 (4th Cir. 2015) (holding that permitting a claim to go forward where nothing more than that an adverse act was done by someone outside of the protected class would permit almost all claims to survive a motion to dismiss); *Causey v. Balog*, 162 F.3d 795, 802 (4th Cir. 1998) (where plaintiff has not shown that "alleged acts of mistreatment were based on his race or age," plaintiff's claim for hostile work environment fails).

once commented that "If it weren't for men ruling, women wouldn't know what to do." Compl.

¶ 67. Plaintiff also alleges that Bisson incentivized other manager to disrespect other women but

offers no examples. Nor does plaintiff allege the dates on which any these alleged remarks

occurred, or which other managers participated in this alleged practice of making women

uncomfortable at work. *See Rosero v. Johnson, Mirmiran, & Thompson, Inc.*, 2022 WL 899442,

at *7 (D. Md. Mar. 28, 2022) (holding that a hostile work environment claim must be dismissed

where a plaintiff "does not explain which employees made those statements or provide the contents

of those statements").[8] The single remark by Bisson combined with plaintiff's vague and

conclusory allegations that there were "other" examples of sex-based remarks are insufficient to

allege plausibly a severe or pervasive hostile work environment based on sex. Accordingly,

defendant's motion to dismiss must be granted with respect to plaintiff's sex-based hostile work

environment. It may be, however, that plaintiff can add meat to the bones of her vague allegations

that other individuals also made sex-based comments and state a plausible claim. Thus, plaintiff

will be permitted to amend her sex-based hostile work environment claim.

Plaintiff's claim of a retaliatory hostile work environment also fails to state a plausible

claim. To establish that harassment by Bisson or Whyte is based on plaintiff's protected activities,

plaintiff must allege that they knew that plaintiff engaged in those protected activities. *See*

*See Alvarado v. Donahoe,* 687 F.3d 453, 459 (1st Cir. 2012) (where employee sought to establish

a retaliatory hostile work environment by  including  incidents  involving  "individuals  who

---

[8] *See also Conteh v. Diversified Protection Corp.*, 2022 WL 874937 (D. Md. Mar. 24, 2022) (holding that a hostile work environment claim must be dismissed where a plaintiff alleges he was subjected to other discriminatory remarks but "he identifies no other specific instances of such conduct"); *Semenovich v. Project Performance Co., Inc.*, 2016 WL 107926, at *5 (E.D.Va. Mar. 18, 2016) ("The kind of conclusory allegations about a general, vaguely hostile atmosphere towards a particular employee made here are not enough to sustain a hostile work environment claim without specific evidentiary examples of incidents of harassment motivated by plaintiff's protected characteristics or actions.").

seemingly had no knowledge of his protected activity," the employee could not rely on those incidents to establish his claim).[9]  Plaintiff does not allege that Bisson or Whyte, her alleged harassers, knew of her protected activities; rather, plaintiff infers that they *must have* known because they "were both in managerial positions" and "it would be very unlikely" for them to be unaware.  Opp'n Br. at 24.  This is not sufficient to survive a motion to dismiss.  *See Roberts*, 998 F.3d at 126 (holding that a plaintiff's burden requires "more evidence than mere curious timing coupled with speculative theories" about "discussions between a decisionmaker and someone with knowledge of the plaintiff's protected activity").  Accordingly, to the extent plaintiff's hostile work environment is based on retaliation, it must be dismissed.

At the motion to dismiss stage, plaintiff has alleged sufficient facts to state a claim for a hostile work environment based on her national origin and religion.  In that regard, plaintiff has alleged the following facts:

    i.    Plaintiff was the only Muslim and Iraqi-Kurdish woman in the engineering department;

    ii.    Plaintiff received positive performance reviews of "exceeds expectations" throughout her employment;

    iii.    Bisson, plaintiff's supervisor, made derogatory comments to plaintiff based on her national origin and religion, such as "Why are Muslims so close minded" and making fun of plaintiff's accent and that her engineering degree was from a "foreign country";[10]

    iv.    Bisson removed an Iranian engineer from the Specification Committee and replaced him with Whyte and refused to permit plaintiff to join the committee.

    v.    When plaintiff complained about Whyte harassing and refusing to work with plaintiff,

---

[9] *See also Watkins v. Ala. Dept. of Pub. Health*, 2019 WL 922252, at *6 (M.D. Ala. Jan. 22, 2019) ("[A] plaintiff asserting a retaliatory hostile work environment claim must allege that her harassers knew that she engaged in statutorily protected activity."); *cf. Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 125-26 (4th Cir. 2021) ("Fourth Circuit precedent addressing the causation prong of a *prima facie* case of retaliation requires that a plaintiff demonstrate that the decisionmaker imposing the adverse action have actual knowledge of the protected activity.").

[10] Plaintiff does not allege that Whyte made similar comments to plaintiff regarding plaintiff's religion or national origin.  Thus, any harassment by Whyte does not appear related to plaintiff's national origin or religion but based on some other animosity towards plaintiff.  Accordingly, the recitation of facts supporting plaintiff's claim for hostile work environment based on national origin and religion will focus on Bisson.

               Bisson berated plaintiff and told plaintiff that she was a "petty and sensitive person";

vi.     Bisson demoted plaintiff in favor of Whyte;

vii.    Bisson would act intimidating towards plaintiff in meetings and would only respond to her rudely and disrespectfully;

viii.   Bisson refused to permit plaintiff to work on data center projects, despite her qualifications;

ix.    When plaintiff presented other foreign candidates for consideration for open positions, Bisson would joke about their names and make comments about their intelligence;

x.     Bisson, Whyte, and the engineers in their departments refused to respond to or provide project information to plaintiff, preventing her from being able to perform her work;

xi.    Bisson would attempt to make plaintiff appear incompetent to customers by promising customers different scopes of work and not including plaintiff in the discussion;

xii.   Plaintiff tried to transfer positions to get away from Bisson's influence and he still failed to work with her and stymied her work performance; and

xiii.  Plaintiff was terminated for not being able to create or maintain necessary internal relations, including with Bisson and Whyte.

Plaintiff's allegations that Bisson engaged in a campaign of harassment based on plaintiff's national origin and religion appear sufficient, at this stage, to satisfy the severe or pervasive prong of a *prima facie* case for a hostile work environment. Here, like other cases, plaintiff has alleged that, based on her national origin and religion, Bisson berated her, made fun of her, passed her over for promotions, demoted her, excluded her, tried to get her to quit, forced her to transfer positions, and, ultimately, his alleged harassing refusal to work with plaintiff resulted in her termination.[11] As the Fourth Circuit has sensibly noted, "the question of whether harassment was

---

[11] *See Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (vacating summary judgment in favor of an employer where a supervisor used a racial epithet on two occasions, threatened the employee's job, and berated the employee's job performance); *Clark v. Brown*, 536 F. Supp. 3d 56 (E.D. Va. 2021) (Ellis, J.) (denying a motion to dismiss a hostile work environment claim where another employee used racial slurs on seven occasions and plaintiff feared returning to work); *LeBoy v. Brennan*, 2017 WL 2868952, at *13 (N.D. Ill. 2017) (denying summary judgment on hostile work environment claim based on mental disability where supervisors had a "campaign of harassment"); *Haysman v. Food Lion*, 893 F. Supp. 1092, 1108 (N.D. Ga. 1995) (denying motion for summary judgment where plaintiff established that supervisors wanted to force him to quit, berated plaintiff in front of other employees, and called him a "gimp").

sufficiently severe or pervasive is quintessentially a question of fact." *Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 335 (4th Cir. 2010). Accordingly, the motion to dismiss the hostile work environment claims based on national origin and religion must be denied.

In sum, defendant's motion to dismiss the hostile work environment claim must be granted with respect to claims of age-, race-, sex-, and retaliation-based harassment. Plaintiff will be permitted to amend her claim of a sex-based hostile work environment. The motion to dismiss must be denied with respect to plaintiff's claims of a national origin and religion based hostile work environment.

## H. Title VII/Section 1981/ADEA: Retaliation (Count VII)

Plaintiff's final cause of action is for retaliation pursuant to Title VII, Section 1981, and the ADEA. In her Complaint, plaintiff has a subheading titled "Protected Activity" in which she lists two protected activities: (i) a 2018 conversation with Human Resources Manager Kane; and (ii) a 2018 conversation with Swingle. *See* Compl. at 7. As discussed *supra* in Section II.A, both are time-barred. Moreover, those 2018 conversations took place years before the two adverse employment actions of which plaintiff complaints that may be timely: (i) her July 2019 demotion (if it took place on or after July 10, 2019); and (ii) her February 2020 termination. Given the lengthy lapse of time between the 2018 conversations and plaintiff's demotion and termination, plaintiff has not alleged a causal connection between those events. *See Pascual v. Lowe's Home Ctrs., Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006) (finding that a gap of three-to-four months is too long to establish a causal connection). Moreover, plaintiff cannot establish that either Bisson or Schleicher knew of plaintiff's 2018 protected activities, which also precludes plaintiff from stating a plausible claim for retaliation. *See Roberts*, 998 F.3d at 126 (holding that a plaintiff's burden requires "more evidence than mere curious timing coupled with speculative theories" about

20

"discussions between a decisionmaker and someone with knowledge of the plaintiff's protected activity"). Thus, to the extent plaintiff's retaliation claim is based on her 2018 protected activities, the motion to dismiss must be granted.

In her opposition to the motion to dismiss, however, plaintiff raises a third possible protected activity: her discussions with Schleicher, the person who decided to terminate her, regarding the discrimination she experienced from Bisson and Whyte. *See* Opp'n Br. at 22.[12] Although plaintiff may not amend her complaint to assert that her conversations with Schleicher were a protected activity through her opposition brief,[13] plaintiff's argument in this regard will be construed as a request to permit an amendment. Thus, it is necessary to analyze whether plaintiff could state a plausible claim for retaliation based on her discussions with Schleicher.

Plaintiff alleges that on at least two occasions she complained to Schleicher regarding Bisson's and Whyte's discriminatory treatment. *See* Compl. ¶¶ 96-97, 113. After her complaints, Schleicher decided to terminate plaintiff's employment based, in part, on her inability to work with Bisson and Whyte – the persons plaintiff alleged were discriminating against her. Plaintiff *may* be able to state a plausible claim for discrimination based on these facts, but the complaint must be amended to allege: (i) when her conversations with Schleicher took place, if plaintiff intends to rely on temporal proximity to establish causation; and (ii) facts regarding what plaintiff specifically complained of to Schleicher. As the Fourth Circuit has explained, retaliation claims under the various anti-discrimination statutes "do not cross-pollinate," meaning that a retaliation claim

---

[12] Plaintiff also alleges in her opposition brief that she engaged in a protected activity when she spoke with the CEO, Feuerberg, in 2019. But plaintiff does not allege that Feuerberg was a decisionmaker with respect to plaintiff's termination nor does plaintiff allege that Schleicher, who was a decisionmaker, knew of plaintiff's complaints to Feuerberg. Accordingly, plaintiff has not alleged facts sufficient to state a plausible discrimination claim based on her conversation with Feuerberg.

[13] It is "axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Caballero v. Am. Mortg. Network*, No. 1:11cv622, 2011 WL 3440025, at *5 (E.D.Va. Aug. 8, 2011) (quoting *Rossman v. Lazarus*, No. 1:08cv316, 2008 WL 4181195, at *7 (E.D.Va. Sept. 3, 2008)).

brought pursuant to a specific anti-discrimination statute must be based on a protected activity under that statute.  *Faulconer v. Centra Health, Inc.*, 808 F. App'x 148, 153 (4th Cir. 2020). Moreover, to constitute protected activity plaintiff must have complained of discrimination protected by one of the statutes under which she is bringing her claims.  *See McNair v. Computer Data Sys. Inc.*, 172 F.3d 863 (4th Cir. Jan. 26, 1999) (Unpublished Table Decision) ("[A] general complaint of unfair treatment does not translate into a charge of discrimination.").[14]  Here, plaintiff has not specified what kind of complaints she made to Schleicher such that it would be clear that she was complaining about discrimination under _each_ of the three statutes under which she is suing (Title VII, Section 1981, and the ADEA).  Accordingly, based on the facts as currently alleged in the Complaint, plaintiff has failed to state a claim for retaliation under any statute.  Plaintiff may, however, be able to state a plausible claim for retaliation if she amends her complaint to make clear the timing of her complaints and the substance of her complaints to Schleicher.

*          *          *

In sum, the motion to dismiss must be granted in part and denied in part.  The motion to dismiss must be granted insofar as: (i) any discrete claim of discrimination in Counts I-V or VII based on adverse employment actions that took place *before* July 10, 2019 must be dismissed; (ii) plaintiff's discrete claims of employment discrimination Counts I-V must be dismissed; (iii) plaintiff's claim of a hostile work environment based on age, race, sex, and her protected activities must be dismissed; and (iv) plaintiff's claim of retaliation must be dismissed.  Plaintiff will be

---

[14] *See also Harris v. Maryland House of Corrections,* 209 F.Supp.2d 565, 570 (D.Md. 2002) (holding that plaintiff could not bring retaliation claim where, in the filed charge for which she claimed she was retaliated, "plaintiff merely complained of the unfair manner in which her supervisors had treated her"); *Oguezuonu v. Genesis Health Ventures, Inc.*, 415 F.Supp.2d 577, 588 (D.Md. 2005) (holding that plaintiff's raising of general complaints about the way she was treated, with no reference to race or national origin discrimination, was not protected activity); *Smith v. Virginia Dept. of Agric. & Consumer Servs.*, Civ. No. 12–77, 2012 WL 2401749 (E.D. Va. June 25, 2012) (holding the plaintiff did not engage in protected activity where she raised concerns to human resources regarding the way she was treated but "nothing indicated she voiced concerns about employment practices made unlawful by Title VII").

permitted to amend her claims of discrimination in Counts I-V to attempt to state a claim for

discrimination based on her July 2019 demotion, if she can allege in good faith that her demotion

falls within the 300-day lookback period. Plaintiff will also be permitted to amend her sex-based

hostile work environment claim to attempt to allege facts demonstrating that any alleged sex-based

harassment was severe or pervasive. Finally, plaintiff will be permitted to amend her retaliation

claim to attempt to state a claim based on plaintiff's complaints to Schleicher. Any amendment in

this regard should make clear when such complaints were made and the substance of those

complaints in relation to the various discrimination statutes upon which plaintiff purports to base

her claim. The motion to dismiss must be denied with respect to Count VI to the extent plaintiff

has based her claim of a hostile work environment on her national origin or religion.

An appropriate order will issue separately.

The Clerk of Court is directed to provide a copy of this Memorandum Opinion to all

counsel of record.

Alexandria, Virginia
July 18, 2022

T. S. Ellis, III
United States District Judge